Livermore, on an application for a rehearing. This action is brought to recover the balance due on a promissory note, made at Lexington, in the state of Kentucky, and which became due on the 12th day of July, 1820. On this note several payments have been made; the last, on the 5th day of January, 1821. The defendants allege, that this note was given in payment for a steam-engine—that the said engine was not made according to contract—that they have incurred great expense in their attempts to make it answer the purpose for which it was intended, and have finally laid it aside as useless. There is no allegation of *508 fraud, nor do they pretend to have returned the engine to the plaintiffs, nor to have offered to return it.
To this defence, the plaintiffs object, that, according to the common law, the purchaser cannot refuse to pay the price of an article, while the contract continues open and not rescinded—that he must return, within a reasonable time, the thing sold; and that he cannot keep both the thing and the price. The plaintiffs also contend, that where a promissory note has been given as security of a contract, it cannot be avoided by showing a partial failure of the consideration. The plaintiffs’ counsel considered these principles so clearly established at common law, that but little pains were taken on the argument. But as it appears to the court, that the rule is not clearly established, and that the cases turn on distinctions which are neither obvious nor just, he is bound to distrust his own opinion, and to investigate the subject more thoroughly. A careful examination of all the cases, has fully confirmed his first impression.
The first case is Power vs. Wells, Cowp. 818. This was an action for money had and received, brought to recover the sum of 21 *509 pounds, the difference paid by the plaintiff upon the exchange of a mare of his for a horse of the defendant. The horse was warranted sound, but proved unsound. The defendant refused to take back the horse. The court of king’s bench decided, that the warranty could not be tried in this form of action.
In Weston vs. Downes, Dougl. 23, it was again decided, that when the contract continued open, there must be a special action on the case.
In Towers vs. Barrett, 1 T. R. 133, the above cases were held to be clear law. In this case, Buller, J. said, that “the distinction between those cases where the contract is open, and where it is not so, is this; if the contract be rescinded, either as in this case, by the original terms of the contract, where no act remains to be done by the defendant himself, or by a subsequent assent by the defendant, the plaintiff is entitled to recover back his whole money; and then an action for money had and received will lie. But if the contract continue open, the plaintiff’s demand is not for the whole sum, but for damages only arising out of that contract.” In another case cited by Buller, J. he held, that if the plaintiff *510 would rescind the contract, he must do it in a reasonable time.
These cases were all decided while Lord Mansfield and Mr. Justice Buller were on the bench. They certainly establish this point, that a purchaser cannot keep the thing, and recover back the price. If he cannot recover back the money which he has paid, he cannot retain the price unpaid. For a claim for damages merely, though arising out of the same contract, will, at common law, furnish no defence to an action on the contract for the price. If the contract be not rescinded, it must be enforced. An action for damages is founded on the contract, and in affirmance of it; as is also an action for the price. Whereas, an action for money had and received supposes the contract to be rescinded, as does also a defence to the payment of the price.
The authority of these cases was fully recognised by the court of common pleas, in the case of Lewis vs. Cosgrave, 2 Taunt. 2. This was an action on a check given for the price of a horse, sold under a warranty of soundness. Heath, J. who tried the cause, was of opinion, that as the plaintiff had re *511 fused to take back the horse, the contract was not rescinded; and that the defendant was bound to pay the amount of the check, and had his remedy by an action for the deceit. Afterwards, on a motion for a new trial, the judge observed, that on reviewing the evidence, there was clear proof that the plaintiff knew of the unsoundness of the horse, and the court held, that it was clearly a fraud, and made the rule absolute. In this case, it will be observed, that the plaintiff immediately offered to return the horse.
The distinction, between a simple non-performance and fraud, is certainly very well founded in the common law. In an action of covenant, where there are mutual and independent covenants, the non-performance by one party is no defence to the other. A covenant precedent may be pleaded in bar; but the non-performance by the plaintiff of a mutual and independent covenant cannot be pleaded in bar; and, in this case, the defendant is left to his cross action. But fraud in the plaintiff is a good bar. The rule is, that fraund vitiates all contracts, and no man can recover in a court of justice, upon a contract which he has obtained through his fraud; and *512 any security taken upon such a contract may in the hands of the party, be avoided. Where there is no fraud, however, and the contract is not rescinded, the non-performance by one party, in case of mutual and distinct covenants, is no excuse for the non-performance of the other. 3 Lev. 41, Cole vs. Hallett; Cowp. 56, Howlet vs. Strickland; Dougl. 690, Kingston vs. Preston. And fraud must always be alleged and proved, and is never presumed.
In Hunt vs. Silk, 5 East, 449, it was again decided by the court of king's bench, that where a contract is to be rescinded at all, it must be rescinded in toto, and the parties put in statu quo. In that case, Lord Ellenborough said, that there "was an intermediate occupation, or part execution of the agreement, which was incapable of being rescinded. If the plaintiff might occupy the premises two days beyond the time when the repairs were to have been done and the lease executed, and yet rescind the contract, why might he not rescind it alter a twelve-month on the same account? The objection cannot be got rid of: the parties cannot be put in statu quo."
The principles established in the foregoing cases are again recognised in Payne vs. Whale, *513 7 East, 274. In Curtis vs. Hannay, 3 Esp. N. P. C. 83, Lord Eldon held, that to enable the purchaser of a warranted article to resist the payment of the price, he must return the article immediately upon discovering the defect, and in as good a condition as when sold. The same was decided by Lawrence J. in Grimaldi vs. White. 4 Esp. N. P. C. 95. In this case the judge said, that a person, having received an article under a specific contract, must either abide by it, or rescind it in toto by returning the thing sold; but he cannot keep the article received under such a specific contract, and for a certain price, and pay for it at a less price than that charged by the contract.
The case of King vs. Boston, 7 East, 481 n., has been referred to by the court as establishing a strange anomaly in the English law. This case was cited in Basten vs. Butter, as having been decided by Lord Kenyon at nisi prius in 1789. It is certainly impossible to reconcile this case with those decided by Butler, J. at nisi prius. cited also in Basten vs. Butter, or with the cases here before cited. Supposing the case to be correctly reported, is merely proves, that Lord Kenyon held a dif *514 ferent opinion from Lords Mansfield, Eldon and Ellenborough; and from the judges Buller, Ashurst, Willes, Lawrence, Heath, Sir James Mansfield, and others. And it is only the opinion of Lord Kenyon at nisi prius, and has less weight than if delivered after an argument at bar. It may be further observed upon this case, that it is merely a loose note, taken by a member of the bar, of a cause tried before a jury in 1789, and first published in 1806. The case is also contrary to Duffitt vs. James, cited 7 East, 480, decided by Lord Kenyon, in 1788. This was an action to recover the amount of a surgeon's bill, and Lord Kenyon permitted the defendant to give evidence of unskilful treatment of him by the plaintiff; taking the distinction where the demand was for skill, where the question might be, whether the plaintiff was entitled to any thing or nothing, and where the action was for goods sold and delivered, or for other certain thing of value, not depending on skill; and considering the case before him as a mixed one, where the demand was part for skill as well as for medicine. Here the learned judge evidently acquiesces in the decisions of the court of king’s bench; and it can hardly *515 be supposed that, in the next year, he should, at nisi prius, have decided a cause in direct opposition to these decisions.
The cases of Basten vs. Butter, 7 East, 479, and of Farnsworth vs. Garrard, 1 Campb. 38, were of a nature similar to that last cited. These were actions for work and labour, and materials found. They are in their nature essentially different from the contract of sale. In the contract of sale, if the article be not according to contract, it may be returned and the sale rescinded, and the parties put in statu quo. But where work and labour have been expended, and materials consumed, or changed from their original shape, the contract is executed, or partially so, and the parties cannot he put in statu quo. And this is without any default in the party injured. The person, therefore, who employs the workmen, has not the power of doing what justice requires of a vendee. He has nothing to return. He has not the power of restoring things to their original situation; and, therefore, it is not required of him. It is immaterial, then, to the merits of this question to inquire, whether there be a difference, in an action for work and labour, between the defence to an *516 action upon a special contract for a certain price, and to an action on a quantum meruit. The better opinion seems to be, that there is a difference; and that, where a certain price has been stipulated, the plaintiff is not to be met with an objection, that the work has been badly performed. Whereas, on a quantum meruit, the plaintiff can recover only what he reasonably deserves to have; and if, through his fault, the defendant has derived no benefit, he can recover nothing. But it will not follow from this, that the rights of the defendant are made to depend, in a great measure, on the form of action which the plaintiff selects. Where there is a special contract for a fixed price, the party must sue on the special contract, and can recover nothing but the price agreed on. He can only sue on a quantum meruit, where there is no fixed price. So, on a sale of goods, if no price has been agreed on, the vendor may declare on a quantum valebant; but, where there is a contract for a certain price, he can sue for that alone.
In Fisher vs. Samuda, 1 Campb. 193, Lord Ellenborough held it to be the duty of the purchaser of any commodity, immediately on discovering that it was not according to order, *517 and unfit for the purpose for which it was intended, to return it to the vendor, or give him notice to take it back. In that case, the plaintiff knew in July, that the beer was unfit to be exported ; yet did not intimate this to the defendants before December. Under these circumstances, said Lord Ellenborough, the plaintiff must be considered as assenting to its being of good quality.
The plaintiffs rely upon these cases as establishing a principle which excludes this defence; and they believe, that if any rule be clearly and certainly established in the common law, that, for which they contend, is so established. If this be true, the parties to this suit have nothing to do with the reasonableness or equity of the rule. Their contract has been made in a country governed by the common law, and with reference to that law, and must be controlled by it. But is it possible, that this is merely a technical rule, and not founded in substantial justice? Can a purchaser be permitted, in justice, to retain the thing sold, and to refuse to pay for it? If the seller has not properly performed his part of the contract, whereby the purchaser is injured, there will be a claim for damages. But *518 damages cannot be set off. By the laws of this state, derived from Roman law, the price of an article may, in certain cases, be diminished. provided an action for that purpose be brought within a year. But the action quanti minoris is unknown to the common law. According to that law, where an article has been sold under a special contract for a fixed price, that price must be paid, or nothing, and the sale rescinded; and no court, either of law or equity, has power to change the terms of the contract, or substitute a new one for that which the parties have made.
It is now nearly three years since this note became due, and two years since the last payment. During all this time, the defendants have kept the engine, of whose defects they complain. They have given no notice to the plaintiffs of its deficiencies, nor have they offered to return it. During one year, by their own showing, they have used it; and if, as is alleged, they have since laid it aside as useless, the use may have been lost to them, but has been equally lost to the plaintiffs. The engine may not have been sufficient for the defendants’ boat, and yet it might have been worth the full purchase money to the *519 plaintiffs. If, when the alleged defect was first discovered, it had been returned, the contract might have been rescinded, without damage to either party; but now, as observed by Lord Ellenborough in Fisher vs. Samuda, there has been a part execution; the parties cannot be put in statu quo. In that case, the judge considered the conduct of the plaintiff as amounting to an acquiescence in the performance of the contract on the part of the defendants. Certainly the facts, admitted by the defendants in this cause, present a much stronger case of acquiescence.
The other point made by the plaintiffs, turns upon the security. It is admitted, that, between the original parties, the consideration may be inquired into; and that, if it should appear the note was given without consideration, or upon an illegal consideration, or upon a consideration which has wholly failed—it will be a good defence. The consideration may consist in either an advantage to the drawer, or a loss to the payee. In this case, the failure of consideration has been only partial, according to the case made by the answer and affidavit. It could only become total, by restoring the engine and rescinding *520 the contract. The defendants have had some use of it; and although it may have been laid aside, as of no further use to them, it might have been of value to the plaintiffs, if returned in due time. Will then a partial failure of consideration, be a defence to an action on the note?
Morgan vs. Richardson, 1 Campb. 40 n. was an action against the acceptor of a bill of exchange at the suit of the drawer, the bill being payable to his own order. The defence was, that the bill had been accepted for the price of some hams bought by the defendant from the plaintiffs, to be sent to the East Indies, and that the hams had turned out so very bad, that they were almost quite unmarketable. Lord Ellenborough held, that although where the consideration of a bill failed entirely, this will be a sufficient defence to an action upon it by the original party, it is no defence to such action, that the consideration fails partially; but that, under such circumstances, the giver of the bill must take his remedy by an action against the person to whom it is given. In Fleming vs. Simpson, 1 Campb. 40 n., he decided the same point; and also, in Tye vs. Gwynne, 2 Campb. 346. In the case of Green *521 leaf vs. Cook, 2 Wheaton, 13, the supreme court of the United States also decided, that a partial failure of consideration is no defence to an action on a promissory note. In this case, Ch. J. Marshall says, “without deciding whether, after receiving a deed, the defendant could avail himself of even a total failure of consideration, the court is of opinion, that to make it a good defence, in any case, the failure must be total. The prior mortgage of the premises, and the decree of foreclosure, do not produce a total failure of consideration. The equity of redemption may be worth something: this court cannot say how much; nor is the inquiry a proper one in a court of law, in an action on the note. If the defendant be entitled to any relief, it is not in this action.”
It is said that the rules of the common law have been modified, or limited, by decisions of some of the state courts in the United States, in such manner as to let in the defence here made by the defendants. So far as these decisions are supported by legal arguments, they are entitled to respect; but they have no particular authority out of the states where they were decided. In the case of Steigleman vs. *522 Jeffries, 1 Seargt. & Rawle, 477, the supreme court of Pennsylvania admit that, by the common law, such a defence, as is here made, could not be supported; but they allow it under a statute of that state. Certainly, this statute can have no authority in Kentucky, where this note was drawn; and there is nothing in this record to justify the conclusion, that the contract for the steam engine was made in Pennsylvania. It is true, that three of the plaintiffs reside in Pennsylvania; but the contract, on which they sue, was made in Kentucky, and with reference to the laws of that state. If an act of assembly of Pennsylvania allows unliquidated damages to be set off to an action, it does not follow that the same can be done in Kentucky, where this contract was made; nor in Louisiana, where the suit is brought.
The strongest case cited, on the part of the defendants, is that of Taft vs. the inhabitants of Montague, 14 Mass. Rep. 282.—That case is, however, very distinguishable from this. That was on a contract for building a bridge in a particular manner, and for a certain price. The work was done unfaithfully, and the bridge was carried away by a freshet. The *523 court held, that the plaintiff could not recover. In delivering the opinion of the court, the judge distinguishes the case from that of Everett vs. Gray, 1 Mass. Rep. 101, which was on a contract of sale, where the goods had been accepted; whereas in this case there had been no acceptance. Everett vs. Gray, was an action brought to recover the price of 98 gunlocks. Defence, that they were worth nothing. Held, that as the defendant had accepted and retained the locks, he could not make this defence.
The two cases cited from the New-York Reports, Beecker vs. Vrooman, 13 John. 302, and Sill vs. Rood, 15 John. 230, were both cases of fraud. The first was an action on the contract—the second on two promissory notes. In the last case, the evidence offered was, that the notes were given in payment for a shearing machine, sold by the plaintiff to the defendant; that the plaintiff made certain representations with respect to the usefulness of the machine, which were utterly false and that known to him at the time, and that the machine was, in fact, worth nothing and totally useless. The court held, that the evidence ought to have been received, and said, that "if *524 the notes in question were procured upon such fraudulent representations, they were utterly void and without consideration, and there never was any cause of action." This, then, was not a case of partial failure of consideration, but of an original want of consideration, the notes having been fraudulently obtained.
The case of Delany vs. Vaughan, 3 Bibb. 379, decided by the court of appeals in Kentucky, was also a case of fraud. It was an action on a contract, to recover the price of a slave—and the defence was, fraud in the seller. The court say, expressly, that “to authorize a verdict in favour of the defendant, it was indispensable for him to establish a fraud, attendant with such circumstances as would make void the contract.” This is, therefore, an authority for the plaintiffs in this cause, and not against them. In another case, reported in the same book, Wallace vs. Barlow's administrators, 3 Bibb, 168, the same court held, in an action of covenant, that a plea going to part of the consideration only, was bad.
These are all the common law cases which have been cited. None of them go the length of admitting this defence; for even King vs. *525 Boston, was an action on the contract, and not on a bill or note; arid it may be safely affirmed, that in a court of common law, the evidence here offered has never been admitted as a defence to an action such as this.
On the argument of this cause, it was conceded, that it must be determined according to the principles of the common law—such was the impression of the counsel for both parties; and no intimation to the contrary fell from the court. Undoubtedly, the rights of the parties arising out of their contract, the merits of the question, must be determined according to the laws of the country where the contract was made. Whether this contract be open or rescinded, must be ascertained by a reference to those laws; and we must look to the same laws to decide, whether either party may now, and under what circumstances, rescind the contract—whether the matter set forth in the defendants’ answer, the non-performance by the plaintiffs, gives to the defendants any claim upon the plaintiffs; and whether that claim be for a certain sum, or for uncertain damages, must also be determined secundum legem loci contractus. The form of action, the nature of process, and the rules of *526 pleading, will be directed by the lex fori. In this case, the common law shows the claim of the defendants to be for uncertain damages; and if, by the laws of Louisiana, uncertain damages could be pleaded, by way of compensation, it might be done in this case. But the law only admits of compensation between debts equally liquidated, and not between a certain debt and uncertain damages. Civil Code, 298, art. 191. And there is no distinction, in favour of the case, where the claim for damages arises out of the same transaction as the certain debt. Can there be a doubt, that this is an attempt to set-off unliquidated damages? The contract was originally good; it was made upon a sufficient consideration; has not been rescinded; and the defendants cannot be allowed, at this time, to rescind it. They charge the plaintiffs with an imperfect performance of the contract, which was the consideration of this note; and, if the facts stated be true, they have a claim for damages; but neither by the common law nor by the civil law, can these damages be set-off. In the case of Winchester vs. Hackley, 2 Cranch, 342, the supreme court of the United States decided, that the defendant could not set-off a *527 claim for bad debts, made by the misconduct of the plaintiff in selling the defendant’s goods as factor, the plaintiff not having guaranteed those debts; being of opinion, that such misconduct was proper to be inquired into in a suit for that purpose—and in that case the set-off arose out of the same transaction as the suit.
The cases cited from 10 Martin, 662. 11 id. 530, 721 & 751, are not denied. They relate to the process or form of proceeding. Whether a suit can be commenced by attachment, or by holding the defendant to bail, must be determined by the laws of the slate where the action is brought. So interrogatories may be put to a party here, though it could only be done in other states, by filing a bill in chancery for a discovery. It is not pretended, that, in a suit brought here, upon a contract made in a common law state, the distinctions, between the jurisdiction of a court of common law and a court of chancery, are to be observed. If, in this case, the defendants could have been relieved in chancery in Kentucky, either by enjoining the judgment of the court of law, or in any other shape, they may be relieved here. That is, if they could have been re *528 lieved against this suit. But the circumstance of their having a separate right of action against the plaintiffs, will not have the same effect—unless this proposition can be established, that if A sues B here, upon a note made in Kentucky, in consideration of the sale of 100 hogsheads of tobacco, B can defend himself against this suit, by showing, that in a distinct contract, made at another time, for the sale of a steam-boat, he has sustained damage through the default of A.
The cases of Moore's Assignee vs. King & al. ante, 262, and of Le Blanc vs. Sanglair & al., ante, 402, were upon contracts made in this state, and turn upon principles peculiar to the civil law. The object of the redhibitory action is to rescind the sale, on account of some defect in the thing sold, and to recover back the price. The object of the action quanti minoris is to obtain a diminution of the price, the purchaser retaining the article. Civil Code, 356, art. 65, 66, 68, 70.—Either of these actions must be brought within six months from the time the defect has been discovered, and, at all events, within a year from the time of sale. The equity of these actions may be used as a defence to an ac *529 tion for the price; and, upon this principle. the two last mentioned cases were decided. The defence was to the payment of the price; and, in the first action, a diminution was allowed, and, in the second, a total rescission of the sale. Neither of these actions are known to the common law. When there is a breach of contract, the vendor can only rescind the sale, by returning the article; but he can, in no case, as has been shown, retain the thing, and refuse to pay the price, or any part thereof. The defence, in the two cases in 12 Martin, did not turn upon matter of form, but upon the nature of the contract, as regulated by our laws. In one case, it was a defence to the whole action, showing a right to rescind the sale and a total failure of consideration. In the other case, showing a right to reduce the amount of the price sued for. In neither case, was it an attempt to set off damages.—Suppose, that either of these actions had been brought after the expiration of a year; could the defence have been sustained?
To prove that this defence may be made, these authorities have been cited; Partida. 3, tit. 10. l. 5. Cur. Phil. p. 1, § 15, and Febrero, p. 2, lib. 3, c. 1, § 6, n. 224-226. The fifth law of *530 the title of the Partidas mentioned, must have been quoted by mistake for the fourth; for, certainly, the fifth law has no bearing on this case. The fourth law of the tenth title of the third Partida, is the foundation of the doctrine quoted from the Curia Phillippica and Febrero. It is this part of the Spanish law which gives to the defendant the right of reconvention, which Febrero defines as follows: La reconvencion es segunda convencion, mutua petition, ó nueva demanda que el reo pone al actor en vista de la que éste le puso, p. 2. l. 3. c. 1. § 6. n. 223. In the same number Febrero says, pero no se permite al reo excomulgado que reconvenga al actor, pues aunque puede comparecer en juicio para excepcionary defenderse, no puede para intentar accion, qual es la reconvencion. It seems, then, that this right is not in nature of an exception, or a defence but of a cross action. Such seems to be the law. Partida, 3, 2, 32. Partida, 3, 10, 4. Juan de Hevia also says, that the plaintiff has nine days to make exceptions to this cross action. Cur. Phil.p. 1. § 15. n. 10, 11. This shows it to be an action; for peremptory exceptions are made to actions, and not to exceptions. The fact is, that this was a right, which the Spanish law gave to the defendant, *531 to bring a cross action against the plaintiff, before the judge who held cognizance of the principal cause, and to whose competency the plaintiff could not except; which cross action was to proceed pari passu with the principal case; and both were to be determined at the same time, either by one judgment, or by separate judgments, as the case might require. The cross action might arise out of any other transaction, than that which was the cause of the original suit; it might be, either for a specific debt, or for uncertain damages; and, in the cross action, a larger sum might be recovered, than in the principal action. Febrero, 2. 1. 3, c. 1, § 6, n. 225, 226, 243.
Supposing this to be an action, the law requires that it be presented to the court by petition, and that the plaintiffs be cited to answer it. Neither has been done in this case; and the latter could not be done; because no citation could be served on the plaintiffs.—Nor is the right of action set forth with that certainty which the law requires. But, after all, is this law in force in Louisiana? The translators of the Partidas say, that it is not; and the committee, to whom the translation was referred by the legislature, any the same. If it *532 be a mode of discharging a contract, or a defence to an action on a contract, some provision on the subject would probably have been found in the Civil Code, provide it was intended the law should continue in force. If this law had been considered by the bench, or the bar, as in force, we should have found some trace of it in the reports. If it be in force, the act of the legislature, passed last session, on the subject of compensation, was wholly unnecessary; for, by this mode, the defendant might have recovered the excess of the debt due to him over that due to the plaintiff. And as this proceeding avoids all difficulty about unliquidated damages, it is singular, that recourse should not have been had to it, if it were believed it could be done.
[For the opinion of the court in the above cause, see Post.]